# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VAXIION THERAPEUTICS, INC.,<br><br>　　　　　　　　　　　Plaintiff,<br>　vs.<br><br>FOLEY & LARDNER LLP; and DOES<br>1–20, inclusive,<br><br>　　　　　　　　　　　Defendant. | CASE NO. 07CV280 – IEG (RBB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR LEAVE TO AMEND ANSWER**<br><br>**[Doc. No. 36]** |

Presently before the Court is defendant Foley & Lardner LLP's motion for leave to file a first amended answer and counterclaims. For the following reasons, the motion is granted as to the proposed affirmative defenses and denied as to the proposed counterclaims.

## BACKGROUND

<u>Factual Background</u>

This case arises out of a soured attorney-client relationship between plaintiff and the law firm that handled plaintiff's patent applications, Foley & Lardner LLP ("defendant"). Plaintiff, a biomedical technology company, developed a novel type of bacterial "minicell," which it wished to patent. (Complaint ¶ 5.) Plaintiff retained defendant to prosecute the patent applications for its "minicell" invention and defendant filed the first provisional patent application on May 24, 2001

1  on behalf of plaintiff.[1]  (Id. ¶ 7.)  According to the rules of the United States Patent and Trademark
2  Office ("USPTO"), all subsequent revisions of this May 24, 2001 provisional patent application
3  retain May 24, 2001 as the "priority date."[2]  (Id.)  On February 25, 2002, defendant filed a revised
4  and updated provisional application for plaintiff's invention.  (Id.)

5      Pursuant to the Paris Cooperation Treaty, international patent protection may be obtained
6  from the original filing date of the U.S. provisional application (here, May 24, 2001), if the
7  applicant files for an international patent ("PCT") within one year of filing the U.S. patent
8  application.[3]  According to plaintiff, during the patent application process for the "minicells,"
9  plaintiff's then-CEO, William Gerhart, called Foley & Lardner attorney Richard Warburg to
10 remind him to file the appropriate PCT applications within the one year window.  (Id. at ¶ 9.)
11 Plaintiff claims Warburg gave assurances the applications would be properly filed.  (Id.)
12 However, defendant did not file plaintiff's PCT within the one year limit (by March 24, 2002), but
13 filed the PCT applications on May 28, 2002, four days late.  Thus, February 25, 2002, the date the
14 revised application was filed, became the PCT priority date.  (Id. ¶ 10.)

15     Plaintiff alleges this oversight had adverse consequences because an Australian competitor,
16 EnGene, filed a U.S. patent application on October 15, 2001 that covers some of the same
17 intellectual property as plaintiff's May 24, 2001 patent application.  EnGene filed its PCT within
18 the one-year window, and thus received international patent protection from their U.S. filing date
19 of October 15, 2001.  (Id. ¶ 10.)  This date is ahead of plaintiff's PCT priority date, February 25,
20 2002, which according to plaintiff would have been May 24, 2001 if defendant had filed the PCT
21 application on time.

22     In 2003, EnGene approached plaintiff regarding possible cross-licensing agreements.  In
23 the midst of due diligence, plaintiff discovered defendant also handled EnGene's PCT

---

[1] Because of the broad scope of the potential patent, plaintiff broke up its application into twenty-three "divisional" applications.  (Compl. ¶ 6.)

[2] "Priority Date" is a term of art generally referring to the first date of filing for the patent application.

[3] In other words, a PCT application may be backdated to the "priority date" of the original U.S. application, if the PCT application is filed within one year of that "priority date."  If the PCT is not filed within one year of the "priority date," protection is only available from a later filing date.  (Compl. ¶ 8.)

applications. (Id. ¶ 12.)

On February 27, 2006, the USPTO issued plaintiff a patent titled "Eubacterial Minicells and their use as vectors for nucleic acid delivery and expression." (Id. ¶ 11.) This patent is numbered 7,183,105 and is hereinafter referred to as the " '105 patent."

**Procedural Background**

Plaintiff filed suit in Superior Court in San Diego, California, on December 28, 2006. Defendant removed the case to this Court on February 9, 2007. (Doc. No. 1.) Defendant's answer, captioned as a general denial, was filed in state court and then in this Court as part of the notice of removal. (Id.) On April 12, 2007, the Court denied plaintiff's motion to remand. (Doc. No. 14.)

Defendant filed a motion to amend its answer on January 14, 2008. (Doc. No. 36.) Plaintiff opposed the motion on February 8, 2008. (Doc. No. 44.) On February 15, 2008, defendant filed a reply. (Doc. No. 49.) The Court held oral argument on February 25, 2008, with Karen Frostrom, Vincent C. Bartolotta, Jr., and Dan Chambers appearing for the plaintiff, and Scott B. Garner and Ryan Lindsey appearing on behalf of the defendant.

**DISCUSSION**

Legal Standard

Under Rule 15 of the Federal Rules of Civil Procedure, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Leave to amend is granted with "extreme liberality." Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990). "There are several accepted reasons why leave to amend should not be granted, including the presence of bad faith on the part of the [party seeking to amend], undue delay, prejudice to the [party opposing amendment], futility of amendment, and that the party has previously amended the relevant pleading." Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc., 989 F. Supp. 1237, 1241 (N.D. Cal. 1997).

//

//

Proposed Affirmative Defenses

Defendant's answer currently contains fifteen affirmative defenses. Defendant's proposed first amended answer would add several additional affirmative defenses, specifically: (1) plaintiff lacks standing; (2) plaintiff's claims are unripe or moot; (3) plaintiff's patent applications are not impacted by the dual representation because there is no legal or actual conflict between EnGene and plaintiff's patents; (4) plaintiff's claims in the '105 patent were not enabled by the May 24, 2001 application; (5) plaintiff's foreign applications are nonpatentable regardless of any alleged negligence; and (6) plaintiff has acted inequitably.

Plaintiff's opposition to the motion focuses on the futility of two of the affirmative defenses. Plaintiff argues its claims are in fact ripe, despite defendant's assertion plaintiff must wait until any international patent applications are granted before bringing its claims. Futility exists where "taking all allegations as true, the new [pleading] fails to allege any facts" establishing the claim. Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1298 (9th Cir. 1998). As defendant correctly argues, plaintiff has merely established the defense will be contested, not that it is legally futile.

Plaintiff also argues the technology in plaintiff's '105 patent directly overlaps with an EnGene patent, contrary to the affirmative defense plaintiff's patent applications are not impacted by EnGene's prior art. (Opp. at 10.) This dispute is central to plaintiff's claim defendant committed malpractice in representing the interests of EnGene and plaintiff at the same time. As with the affirmative defense of unripeness, plaintiff does not show the defense would be futile, but only that it would be contested.

The other factors the Court considers also support granting leave to add the proposed affirmative defenses. Defendant has shown the proposed affirmative defenses are not made in bad faith, are not made after undue delay, and are not unduly prejudicial to the plaintiff. Plaintiff has known of the proposed amendments since October of 2007 and defendant's delay in filing the motion is due to defendant's development of factual support for these defenses through discovery.

Accordingly, the Court will permit defendant to add the proposed affirmative defenses.[4]

Proposed Counterclaims

Defendant's proposed amended answer asserts two counterclaims. In the first counterclaim, defendant seeks a declaratory judgment plaintiff's '105 patent is invalid under the Patent Act. (Proposed Answer ¶¶ 6-7.) In the second, defendant seeks a declaratory judgment the '105 patent is unenforceable due to plaintiff's inequitable conduct in the prosecution of the patent. (Id. ¶¶ 8-11.) Plaintiff argues amendment is futile because defendant does not have standing to seek a declaratory judgment of the invalidity or unenforceability of the '105 patent.

Under Rule 13 of the Federal Rules of Civil Procedure, the Court "may permit a party to amend a pleading to add a counterclaim if it was omitted through oversight, inadvertence, or excusable neglect or if justice so requires." Fed. R. Civ. P. 13(f). Defendant's proposed counterclaims raise the same issues as defendant's proposed affirmative defenses of lack of enablement (Proposed Answer ¶¶ 54-56) and inequitable conduct (id. ¶¶ 68-71).[5] Because defendant may amend its answer to assert the affirmative defenses, granting defendant leave to assert the declaratory counterclaims does not serve "the interests of justice." See Johnson v. Buckley, 356 F.3d 1067, 1078 (9th Cir. 2004) (upholding district court's denial of leave to amend to assert unnecessary claims); Zrncevich v. Blue Hawaii Enters., Inc., 738 F. Supp. 350, 356 (D. Haw. 1990).[6]

---

[4] Plaintiff also makes a general argument leave to amend should be denied because the case is a simple malpractice action, not a patent case. As the Court has previously noted, plaintiff must prove causation and damages as elements of its legal malpractice claim. Viner v. Sweet, 30 Cal. 4th 1232, 1241 (2003). The causation and damages issues in this case necessarily implicate complex issues of patent law, thereby conferring federal question jurisdiction upon the Court. (Order of 4/12/07 at 11.) Accordingly, the Court rejects this argument.

[5] Defense counsel acknowledged at oral argument the affirmative defenses go "most of the way" toward protecting defendant's interests. Counsel explained the declaratory counterclaims were nonetheless necessary in order to prevent potential future litigation. The Court is satisfied future cases would be dismissed insofar as plaintiff attempted to litigate related issues due to claim preclusion, issue preclusion, and statutes of limitations.

[6] Alternatively, the Court would decline jurisdiction under the Declaratory Judgment Act, which gives the Court "unique and substantial discretion in deciding whether to declare the rights of the litigants." MedImmune, Inc. v. Genentech, Inc., 127 S. Ct. 764, 776 (2007) (quoting Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995)). In Wilton, the district court acted within its discretion in dismissing a declaratory judgment action due to a parallel state court proceeding. Id. In this case, the Court would similarly be within its discretion to decline jurisdiction because the instant case will resolve the dispute between the parties without need for declaratory counterclaims. Because the Court would decline jurisdiction over these unnecessary counterclaims, leave to amend is futile.

CONCLUSION

For the foregoing reasons, the Court DENIES IN PART defendant's motion and denies defendant leave to assert the proposed counterclaims.  The Court GRANTS IN PART defendant's motion and grants defendant leave to amend its answer to assert the proposed affirmative defenses. Defendant may file an amended answer consistent with this opinion within ten days of the date of this order.

**IT IS SO ORDERED.**

**DATED: February 27, 2008**

_____
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**