1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# SOUTHERN DISTRICT OF CALIFORNIA

10
11

VAXIION THERAPEUTICS, INC.,

12

                                    Plaintiff,

            vs.

13
14

FOLEY & LARDNER LLP,

15

                                    Defendant.

CASE NO. 07cv280-IEG(RBB)

Order Granting in Part and Denying in Part Defendant's Motion for Summary Judgment on Conflicts-Related Claims [Doc. No. 85]; Denying Motion to Strike as Moot [Doc. No. 129]

16
17
18
19
20
21

        Defendant Foley & Lardner ("Foley") moves the Court for summary judgment on Plaintiff Vaxion Therapeutics' ("Vaxiion") second, third, fourth, and fifth causes of action for dual representation of adverse interests, breach of contract, interference with economic advantage, and constructive fraud insofar as those claims are based upon Foley's alleged conflict of interest. Foley also moves the Court for summary judgment on Vaxiion's claim for punitive damages.

22
23
24

        Vaxiion has filed an opposition. Foley has filed a reply and has also filed a motion to strike evidence presented by Vaxiion in opposition regarding subsequent remedial measures. Vaxiion has filed an opposition to the motion to strike, and Foley filed a reply.

25
26
27
28

        A hearing was held on these motions on November 10, 2008. After considering all the arguments of the parties, for the reasons explained herein, the Court GRANTS Foley's motion for summary judgment on Vaxiion's claim for intentional interference with contractual relations, GRANTS Foley's motion for summary judgment on Vaxiion's claim for punitive damages, and

DENIES the remainder of Foley's motion for summary judgment on the second, third, fourth, and fifth causes of action based upon Foley's alleged conflict of interest. The Court also DENIES AS MOOT Foley's motion to strike.

### *Relevant Facts*

Vaxiion alleges Foley breached its fiduciary duty when it simultaneously represented Vaxiion and a competitor company (Australian company, EnGeneIC), in proceedings before the U.S. Patent and Trademark Office ("USPTO") in the area of "minicells." The following facts are relevant to Vaxiion's causes of action for dual representation of adverse interests, breach of contract, interference with economic advantage, and constructive fraud.

On May 24, 2001, Foley San Diego attorneys Richard Warburg and Drew Granston filed on behalf of Vaxiion a U.S. provisional patent application entitled "Minicell Compositions and Methods" ("First Provisional Application"). [Complaint, ¶¶ 6-7; Declaration of Andrew Granston, Ph.D. in Support of Defendant Foley & Lardner's Motion for Partial Summary Judgment on Vaxiion's Conflicts-Related Claims ("Granston Decl."), Doc. No. 85-26, ¶ 4, Exhibit A.] On February 25, 2002, Foley attorneys Warburg and Granston filed a second provisional application with the same title ("Second Provision Application"). [Complaint, ¶¶ 6-7; Granston Decl., ¶ 6, Exhibit B.]

To claim priority in the U.S. to the First Provisional Application filed on May 24, 2001, Vaxiion had to file a non-provisional U.S. application within one year, by May 24, 2002. In order to claim priority to the First Provisional Application outside the U.S., Vaxiion had to file a Patent Cooperation Treaty ("PCT") application by the same date.[1] Foley, on behalf of Vaxiion, did file a non-provisional U.S. patent application ("Non-Provisional Application") on May 24, 2002, claiming priority to the First and Second Provisional Applications. [Granston Decl., ¶ 7, Exhibit B.] Unfortunately, Foley failed to timely file the PCT Application. Instead, Foley filed the PCT application the next business day, May 28, 2002. [Granston Decl., ¶ 8; Declaration of Richard

---

[1]Vaxiion alleges Foley, on behalf of Vaxiion, could have filed a single PCT application that included a claim for rights in the U.S., rather than filing a separate U.S. non-provisional application. Whether Foley should have filed the PCT, and whether the PCT would have given Vaxiion the same rights in the U.S. as the non-provisional application Foley did file, are not in dispute in this motion.

Warburg, Ph. D. in Support of Foley & Lardner's Motion for Partial Summary Judgment on Vaxiion's Conflicts-Related Claim ("Warburg Decl."), Doc. No. 85-36, ¶ 4.]  As a result of the missed deadline regarding the PCT Application, Vaxiion was not able to claim priority to the May 24, 2001 First Provisional Application in the international arena, but only to the February 25, 2002 Second Provisional Application.

After Foley filed the First Provisional Application on Vaxiion's behalf on May 24, 2001, but before Foley filed the Second Provisional Application on Vaxiion's behalf on February 25, 2002, an attorney in Foley's Washington D.C. office, Stephen Bent, caused to be filed a provisional application for an Australian company, EnGeneIC, also covering certain aspects of minicell technology. [Declaration of Stephen Bent in Support of Defendant Foley & Lardner's Motion for Partial Summary Judgment on Conflicts-Related Claims ("Bent Decl."), Doc. No. 85-9, ¶ 2.]  On October 15, 2001, Foley D.C. Attorney Bent caused to be filed on behalf of EngenIC a provisional application, titled "Intact Minicells as Vectors for DNA Transfer and Gene Therapy In Vitro and In Vivo."  [Id.]  EnGeneIC's PCT Application, which was filed one year later on October 15, 2002, claims priority to EnGeneIC's provisional application, and as a result is considered senior in the international arena to Vaxiion's PCT Application.  [Id., ¶ 3.]

Prior to the publication of EnGeneIC's PCT Application on April 24, 2003, neither Warburg nor Granston knew of EnGeneIC's provisional application or that EnGeneIC was represented by Foley D.C. Attorny Bent.  [Warberg Decl., ¶ 5; Granston Decl., ¶ 9.]  Foley has not provided any information regarding when Foley D.C. Attorney Bent learned that Foley represented Vaxiion.

After Foley missed the PCT Application deadline, Vaxiion terminated its relationship with Foley in July 2002 and instead retained the services of the law firm of Knobbe Martens Olson & Bear. [Transcript of February 20, 2008 Deposition of Roger Sabbadini ("Sabbadini Depo."), Exhibits E and F to Declaration of Scott Garner in Support of Defendant Foley & Lardner's Motion for Partial Summary Judgment ("Garner Decl."), Doc. No. 85-19, p. 384, lines 6-7.] Knobbe Martens continued to prosecute Vaxiion's patent applications for minicell technology.  On February 27, 2007, the USPTO issued to Vaxiion Patent No. 7,183,105 (the "105 Patent"), which

1    claimed priority to the First and Second Provisional Applications.  [Lindsey Decl., Exhibit G.]

2          After Vaxiion terminated its relationship with Foley, Foley continued to represent

3    EnGeneIC with regard to its prosecution of minicell patent claims in the United States and abroad.

4    In 2006 and 2007, a USPTO examiner rejected several claims in EnGeneIC's Non-Provisional

5    U.S. Application in part in light of Vaxiion's Non-Provisional U.S. Application. [Declaration of R.

6    Brian McCaslin in Support of Defendant Foley & Lardner's Motion for Partial Summary

7    Judgment on Conflicts-Related Claims ("McCaslin Decl."), ¶¶ 2 and 4, Exhibits A and C.]  In

8    response to the examiner's rejection, Foley on behalf of EnGeneIC submitted declarations

9    attempting to antedate the Vaxiion prior art reference (i.e. demonstrate EnGeneIC reduced its

10   invention to practice before Vaxxion[2]).  [McCaslin Decl., ¶¶ 3 and 5.]  On July 25, 2007, the

11   USPTO withdrew its rejection of EnGeneIC's Non-Provisional Application based upon Vaxiion's

12   Non-Provisional U.S. Application, and instead rejected EnGeneIC's application based upon

13   Vaxiion's then-issued '105 Patent.  [Id., ¶ 6, Exhibit E.]

14         Vaxiion learned that Foley represented EnGeneIC no later than November of 2004, when

15   EnGeneIC approached Vaxiion about cross-licensing their respective technologies. [Sabbadini

16   Depo., p. 251, lines 2-22.]  Vaxiion never, however, raised an issue regarding Foley's continued

17   representation of EnGeneIC until late August 2007, when Vaxiion's counsel indicated it would not

18   produce certain laboratory notebooks in discovery because of Foley's continued representation of

19   EnGeneIC.  [Garner Decl., ¶ 13.]  Foley withdrew from its representation of EnGeneIC with

20   respect to EnGeneIC's minicell PCT Application and EnGeneIC's Non-Provisional U.S.

21   Application, in late 2007 or early 2008. [Bent Decl., ¶ 6.]  EnGeneIC's PCT claims were

22   eventually nationalized in Australia, where EnGeneIC obtained a broad patent regarding minicell

23   technology. [Lindsey Decl., Exhibit HH.]

24

25

26
_____

27        [2]Foley argues the patent prosecution process is *ex parte* and that its actions in attempting to
     antedate the Vaxiion prior art reference had no impact upon Vaxiion's patent rights. The impact of
28   Foley's actions in representing EnGeneIC before the USPTO in 2006 and 2007 are not directly at
     issue in this motion.

### _Legal Standard_

Summary judgment is proper where the pleadings and materials demonstrate "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A material issue of fact is a question the trier of fact must answer to determine the rights of the parties under the applicable substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.  Summary judgment may be granted in favor of a defendant on an ultimate issue of fact where the defendant carries its burden of "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325; see Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1106 (9th Cir. 2000).

The moving party bears "the initial responsibility of informing the district court of the basis for its motion." Celotex, 477 U.S. at 323.  To satisfy this burden, the moving party must demonstrate that no genuine issue of material fact exists for trial.  Id. at 322.  However, the moving party is not required to negate those portions of the non-moving party's claim on which the non-moving party bears the burden of proof.  Id. at 323.  To withstand a motion for summary judgment, the non-movant must then show that there are genuine factual issues which can only be resolved by the trier of fact.  Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 738 (9th Cir. 2000) (citing Fed. R. Civ. P. 56; Celotex, 477 U.S. at 323).  The nonmoving party may not rely on the pleadings but must present specific facts creating a genuine issue of material fact.  Nissan Fire, 210 F.3d at 1103.  The inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the motion, but conclusory allegations as to ultimate facts are not adequate to defeat summary judgment.  Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1180 (9th Cir. 2002).  The Court is not required "to scour the record in search of a genuine issue of triable fact," Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996), but rather "may limit its review to the documents submitted for purposes of summary judgment and those parts of the record specifically referenced therein." Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1030 (9th Cir. 2001).

### *Discussion*

In this motion, Defendant Foley moves for summary judgment as to Plaintiff Vaxiion's second (dual representation of adverse interests/breach of fiduciary duty), third (breach of contract), fourth (interference with economic advantage), and fifth (constructive fraud) causes of action insofar as those causes of action are based upon Foley's alleged conflict of interest. Foley also moves for summary judgment on Vaxiion's claim for punitive damages.

### *1.     Breach of Fiduciary Duty*

Vaxiion's second cause of action, entitled "Dual Representation of Adverse Interests" alleges that at the same time Foley was representing Vaxiion with regard to the submission of the PCT application, Foley had also been retained by EnGeneIC whose legal interests were actually adverse.  [Complaint, ¶ 20.]  Vaxiion alleges the conflict was not disclosed and as a result of Foley's dual representation and breach of fiduciary duties, Vaxiion suffered injury and damages in lost profits and earning capacity resulting from Foley's failure to timely file the PCT application. The Court indicated in its Order denying Plaintiff's motion to remand that Vaxiion's "Dual Representation" claim was in essence one for breach of fiduciary duty, and Plaintiff in its papers similarly treats the claim as one for breach of fiduciary duty.

Foley argues Vaxiion's claim for breach of fiduciary duty must fail because Vaxiion cannot demonstrate it suffered damages proximately caused by the breach.  Foley argues there is no presumption of imputed shared confidences in an action for breach of fiduciary duty. Instead, Foley argues that in order to prevail on its claim for breach of fiduciary duty, Vaxiion must demonstrate "that the San Diego Attorneys *actually* disclosed confidential information to the D.C. Attorneys."  [Foley & Lardner's Memorandum of Points and Authorities in Support of Motion for Partial Summary Judgment on Conflicts-Related Claims, Doc. No. 85-2, p. 13.]  Foley also argues Vaxiion waived any objection to Foley's representation of EnGeneIC by failing to seek Foley's disqualification.

#### A.     Presumption of imputed confidences in action for breach of fiduciary duty

Foley in its papers properly sets forth the standard of causation applicable with regard to actions *for legal malpractice.*  In <u>Viner v. Sweet</u>, 30 Cal. 4th 1232 (2003), the California Supreme

Court clarified that in all actions for legal malpractice, the plaintiff must demonstrate "that *but for* the alleged negligence of the defendant attorney, the plaintiff would have obtained a more favorable" outcome. 30 Cal. 4th at 1241 (emphasis in original). The causation inquiry has been likened to a trial-within-a-trial because "the crucial causation inquiry is *what would have happened* if the defendant attorney had not been negligent." Id. at 1242 (emphasis in original). The plaintiff need not prove causation with absolute certainty, but instead "need only 'introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result'." Id. at 1243 (quoting Ortega v. Kmart Corp., 26 Cal. 4th 1200, 1205 (2001)). This is an "objective approach" which requires the factfinder to determine what the result should have been in the underlying proceeding or matter in the absence of counsel's negligence. Church v. Jamison, 143 Cal. App. 4th 1568, 1585 (2006).

Although Foley properly cites the elements of the tort of breach of fiduciary duty, as well as the standards for evaluating causation in a legal malpractice action in California, Foley fails to cite even a single California case regarding the standard to be applied to the causation inquiry in an action for breach of fiduciary duty. Instead, Foley relies upon out-of-state cases holding that the presumption of imputed knowledge of confidential information in cases involving disqualification of counsel *does not apply* in the legal malpractice context. Foley's argument fails for two reasons: (i) under California law breach of fiduciary duty is a "species of tort distinct from a cause of action for professional negligence"; and (ii) under California law, the tort of breach of fiduciary duty requires neither a showing of actual disclosure of confidential information nor that the attorney jettisoned the interests of one client over the other.

### i. Breach of Fiduciary Duty under California Law

Under California law breach of fiduciary duty is a "species of tort distinct from a cause of action for professional negligence." Stanley v. Richardson, 35 Cal. App. 4th 1070, 1077 (1995). The elements of a cause of action for breach of fiduciary duty are: "(1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach." Id.; see also Benasra v. Mitchell Silberberg & Knupp LLP, 123 Cal. App. 4th 1179, 1183 (2004).

Foley correctly asserts that a violation of the Rules of Professional Conduct, in itself, does

1   not provide the basis for civil liability.  BGJ Assoc., LLC v. Wilson, 113 Cal. App. 4th 1217, 1227

2   (2003).  However, "[i]t is well established that an attorney's duties to his client are governed by

3   the Rules of Professional Conduct, and that those rules, together with statutes and general

4   principles relating to other fiduciary relationships, 'help define the duty component of the

5   fiduciary duty which an attorney owes to his client'."  American Airlines, Inc. v. Sheppard Mullin,

6   Richter & Hampton, 96 Cal. App. 4th 1017, 1032 (2002) (quoting Mirabito v. Liccardo, 4 Cal.

7   App. 4th 41, 45 (1992)).  The court may determine the scope of an attorney's fiduciary duty as a

8   matter of law.  Stanley, 35 Cal. App. 4th at 1086.  It is generally a question of fact whether the

9   attorney has breached a fiduciary duty.  Id. at 1087.

10          Because Foley moves for summary judgment only on causation, and not based upon the

11   duty or breach elements of the cause of action, the Court need not detail the scope of the duties

12   Foley owed to Vaxiion under USPTO Disciplinary Rule 10.66 or Rule 3-310(B) and (C) of the

13   California Rules of Professional Conduct. Simply stated, those Rules establish that Foley owed a

14   duty to Vaxiion not to represent clients whose interests actually conflict with Vaxiion's interests.

15   Foley does not attempt to demonstrate it is entitled to summary judgment on either the duty or

16   breach elements.

17                    ii.      *Proof of actual disclosure of confidences or favoring of one client over*

18                             *another*

19          Foley argues that in order to survive summary judgment, Vaxiion must demonstrate

20   Foley's San Diego attorneys actually disclosed confidential information to Foley's D.C. Attorneys.

21   Foley argues there is no evidence there was any sharing of confidential information between the

22   Foley San Diego and Foley D.C. Attorneys.  Foley argues there is also no evidence Foley favored

23   EnGeneIC over Vaxiion.

24          Foley cites several out-of-state cases in support of its argument that Vaxiion must

25   demonstrate the sharing of confidential information, and may not rely upon any presumption of

26   shared confidences to establish the causation element of the breach of fiduciary duty claim.  In

27   Capital City Church of Christ v. Novak, 2007 WL 1501095 (Tex. App.-Austin May 23 2007), a

28   church sued its prior law firm and two of its partners for breach of fiduciary duty arising out of the

firm's subsequent representation of a co-owner of a church building. The sole claim asserted by the church was that the firm and attorneys breached their fiduciary duties by misusing confidential information obtained through the prior relationship to the benefit of the firm's current client. The plaintiff argued there was a substantial relationship between the firm's prior and subsequent representations, and they should not have to demonstrate any actual disclosure or use of confidential information.  The Texas court rejected the argument, finding instead the plaintiff must produce actual evidence the firm used or disclosed confidential information in its subsequent representation.[3]  Id. at *4.

Similarly, in Wilbourn v. Stennett, Wilkinson & Ward, 687 So.2d 1205 (Miss. 1996), a former client of the law firm brought a malpractice action alleging the attorneys improperly represented another client in a suit adverse to his interests relating to matters for which he had previously sought legal advice.  Plaintiff based his claim largely upon the Mississippi Rules of Professional Conduct prohibiting subsequent representation of adverse legal interests. The Mississippi court rejected the Rules as a basis for determining liability for legal malpractice, holding the plaintiff must instead demonstrate an employee of the law firm disclosed or used confidences learned during the course of the earlier representation.  687 So. 2d at 1217.

Finally, in Lazy Seven Coal Sales, Inc. v. Stone & Hinds, P.C., 813 S.W.2d 400 (Tenn. 1991), the plaintiff sought damages for legal malpractice against his former law firm, alleging the firm improperly represented the corporation of which he used to be a co-owner in an action against him.  Plaintiff argued the Tennessee Code of Professional Conduct prohibited the firm from accepting representation in a matter adverse to his interests.  The Tennessee court, however, found that the Code did not sufficiently set the standard of care for lawyers in the circumstances presented in the case, and plaintiff could not rely on the code to show his lawyer's performance

---

[3]It is noteworthy that the Court in the Novak case characterized the question of whether the attorneys used or disclosed the church's confidential information in its subsequent representation of the adverse client as going to the breach element of the church's breach of fiduciary duty claim. Foley, here, argues Vaxiion is precluded from showing it suffered any injury resulting from the alleged breach of fiduciary duty because there is no evidence Granston or Warburg disclosed any confidential information to the Foley D.C. Attorney. However, evidence of use or disclosure of confidential information by Foley attorneys goes to the question of whether there was a breach of the fiduciary duty, not simply causation.

1    fell below the standard of care necessary to prove an action for legal malpractice.  813 S.W. 2d at

2    407.

3         These cases may be of use to Foley if Vaxiion had brought suit in Texas, Mississippi, or

4    Tennessee, or if Vaxiion's only cause of action was for legal malpractice.  However, Vaxiion's

5    second cause of action, under California law, alleges breach of fiduciary duty.  California courts

6    have not imposed any requirement that a plaintiff alleging breach of fiduciary duty under similar

7    circumstances prove actual disclosure of confidential information.  To the contrary, California

8    courts have explicitly held that in an action for breach of fiduciary duty, the plaintiff is not

9    required to show confidences were actually disclosed.

10        For example, in American Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton,

11   American alleged Sheppard Mullin breached its duty of loyalty when it accepted an engagement to

12   act as a Rule 30(b)(6) witness[4] for a company with adverse interests. 96 Cal. App. 4th at 1031.

13   American had retained Sheppard Mullin attorney Gregory Long in 1989 and 1990 to represent it

14   regarding its purchase of MD-11 Aircraft from McDonnell Douglas and disputes arising from

15   American's dissatisfaction with the payload capacity and range of such aircraft.  American and

16   McDonnell Douglas ultimately settled their dispute in 1993 with minimal assistance from Long.

17   Id. at 1023-24.  In May 1993, a Swiss aircraft broker, ADO, filed suit against McDonnell Douglas

18   alleging failure of the MD-11 aircraft it purchased to deliver according to represented payload

19   capacity and range. In the course of that action, a discovery master ordered McDonnell Douglas to

20   turn over documents related to its earlier dealings with American regarding its similar complaints

21   about the MD-11s. American engaged Long and Sheppard Mullin again to advise it regarding its

22   obligations and to oppose the discovery. Long completed this work in July1995.

23        Later in 1995, ADO's attorneys asked Long to act as a Rule 30(b)(6) witness on behalf of

24   the company. Over American's objections, Long accepted the engagement in March 1996. At the

25   Rule 30(b)(6) deposition, counsel for McDonnell Douglas repeatedly questioned Long regarding

26   the information he previously obtained from American about the payload capacity and range of the

27   _____

28        [4]Under Fed. R. Civ. P. 30(b)(6), a company is required to present for deposition the
     "person most knowledgeable" to testify on its behalf regarding issued specified by the deposing
     party in its notice.

MD-11s. 96 Cal. App. 4th at 1028-29.  Upon American's request, Long was eventually disqualified from testifying as a Rule 30(b)(6) witness for ADO because of the conflict of interest.  Id. at 1029-30. American then brought suit against Long and Sheppard Mullin alleging, among other things, breach of fiduciary duty and negligence.

American prevailed at trial on its claims for breach of fiduciary duty and for negligence. Sheppard Mullin appealed. Sheppard Mullin argued their employment with ADO was not *adverse* to American, and Long possessed no confidential information of American's that was *material* to its employment with ADO.[5]  Id. at 1038.  Sheppard Mullin also argued there was no evidence Long failed to fulfill his duties to American as a result of the engagement with ADO. Id. at 1044. The court rejected both arguments.  "It matters not that in the final analysis American's confidences were not disclosed. What matters more is that Long and [Sheppard Mullin] exhibited an absence of loyalty when they jettisoned American in order to assume a preferred position with ADO."  Id.  In addition, although the defendants had requested that the trial court instruct the jury that plaintiff was required to show defendant's representation was "rendered less effective because of defendants' breach of fiduciary duty" and "the quality of the work defendants performed for plaintiff actually was lowered as a result of any conflict of interest," the appellate court noted such instructions would not be a correct statement of the law  Id.  The court found American proved sufficient damages as an element of the cause of action for breach of fiduciary duty by showing it incurred attorneys fees of $8,175 to prevent Long from serving as ADO's Rule 30(b)(6) witness.

In Benasra v. Mitchell, Silberberg & Knupp LLP, the court similarly rejected the proposition that a plaintiff must prove actual disclosure of confidences by a former attorney in order to sustain a cause of action for breach of fiduciary duty.   In that case, plaintiffs sued their former attorneys for breach of fiduciary duty when the attorneys represented plaintiffs' opponent in a subsequent arbitration.  The trial court granted the motion to strike the plaintiffs' claim, apparently accepting defendant's argument that the plaintiffs failed to demonstrate counsel actually obtained and improperly disclosed confidential information which caused damage by

---

[5]Like the Texas court in Novak, the court in American Airlines treated this question of whether there was any actual disclosure of confidences as relevant to the question of *breach* and not to the issue of *causation* as argued by Foley in this case. Id. at 1038-39.

1   changing the outcome of the arbitration.  123 Cal. App. 4th at 1182.  In reversing, the court

2   reiterated that no showing of actual disclosure of confidences is necessary:

> As our decision in *American Airlines* makes clear, the actual disclosure of
> confidences by a former attorney during litigation is not required to form the basis
> for the tort of breach of duty of loyalty. The breach occurs not when the attorney
> steps into court to represent the new client, but when he or she abandons the old
> client. . . . [O]nce the attorney accepts a representation in which confidences
> disclosed by a former client may benefit the new client due to the relationship
> between the new matter and the old, he or she has breached a duty of loyalty. . . .
> Evidence that confidential information was actually used against the former client
> in litigation would help support damages, but is not the basis for the claim.

8   Id. at 1189.

9         Foley attempts to distinguish both American Airlines and Benasra, arguing both of those

10   cases involved a single attorney representing clients with conflicting interests.  This argument is

11   not persuasive.  The Rules of the USPTO provide that where an attorney is required to decline or

12   withdraw from representation of a client because of a conflict, no other attorney affiliated with the

13   firm can continue such employment.  37 C.F.R. § 10.66(d). Furthermore, although the California

14   Rules of Professional Conduct do not specifically address the issue of vicarious disqualification,

15   California courts generally hold that where an attorney is disqualified from representation, the

16   entire law firm is vicariously disqualified.  Henricksen v. Great American Savings & Loan, 11 Cal.

17   App. 4th 109, 114 (1992). Although this is not a disqualification case, the California courts rely

18   upon the Rules of Professional Conduct to help define the scope of the fiduciary duty owed to a

19   client.  American Airlines, 96 Cal. App. 4th at 1032.  California law does not require a former

20   client suing for breach of fiduciary duty to show actual disclosure of confidential communications.

21   Foley has not demonstrated it is entitled to judgment on Vaxiion's conflicts-related claims.

22         Finally, there Foley cites no persuasive authority for its argument that Vaxiion must

23   produce some evidence Foley favored EnGeneIC over Vaxiion or degraded its quality of work in

24   order to benefit EnGeneIC. Foley's argument is contrary to the California court's decision in

25   American Airlines, where the court found it was not appropriate to instruct the jury that they must

26   find the attorney's work was rendered less effective or the quality of the attorney's work was

27   actually lowered because of the conflict of interest.  96 Cal. App. 4th at 1044.

28         In order to prevail on its claim of breach of fiduciary duty under California law, Vaxiion

1   need not demonstrate that Foley actual disclosed its confidences or degraded the quality its work.

2   Foley is not entitled to summary judgment on Vaxiion's breach of fiduciary duty claim.

3       B.      Waiver of Conflict of Interest

4       Vaxiion learned Foley represented EnGeneIC with regard to its minicell patent application,

5   at the very latest, in November of 2004.  However Vaxiion never raised the issue of Foley's

6   continued representation of EnGeneIC until August 2007, almost a year after this case was filed.

7   As a result, Foley argues the Court should grant summary judgment on that portion of Vaxiion's

8   breach of fiduciary duty claim related to Foley's continued representation of EnGeneIC.

9       A party may waive a conflict of interest, and be barred from seeking the disqualification of

10  counsel, if he fails to raise the issue in a timely manner.  For example, in River West, Inc. v.

11  Nickel, 188 Cal. App. 3d 1297 (1987), one of the defendants moved the court for disqualification

12  of one of the plaintiffs' attorneys. The defendant argued disqualification was appropriate because

13  the attorney represented him in similar litigation approximately 30 years prior.  The litigation in

14  which the defendant sought disqualification was complex, with many parties and numerous

15  attorneys involved. At the time of filing the motion to disqualify, plaintiffs' attorneys had already

16  engaged in over 3,000 hours of litigation effort over the 47 months the case had been pending after

17  the defendant filed his answer.  The trial court found a substantial relationship between the prior

18  and current litigation, and granted the motion to disqualify counsel. The appellate court reversed,

19  noting the equitable nature of the relief defendant was seeking and finding the defendant's delay in

20  making the disqualification motion "so unreasonable and the resulting prejudice so great, that the

21  law must assume an implied waiver of the right to disqualify" the attorney.  Id. at 1313.

22      Similarly, in White v. Superior Court, 98 Cal. App. 3d 51 (1979), plaintiff moved to

23  disqualify defendant's attorney on the basis he drafted the disputed partnership agreement and

24  therefore should be called as a witness in the case.  The case was filed on November 1, 1978, and

25  although plaintiff notified defense counsel of the conflict of interest within a month of the filing of

26  the complaint, he did not move to disqualify defense counsel until almost seven months later, after

27  the court had heard and ruled on defendant's motion for summary judgment and separate

28  demurrer. The trial court granted the motion for disqualification but the appellate court reversed

1    finding "[plaintiff's] motion is clearly a tactical maneuver" and the motion instead should have

2    been made "at the first reasonable opportunity by proper motion."  Id. at 55-56.

3          Although California courts have never carried this waiver rationale over from the

4    disqualification context to cases alleging breach of fiduciary duty or legal malpractice, Foley cites

5    several out-of-state cases which have.  In Lazy Seven Coal Sales, 813 S.W. 2d at 400, the

6    Tennessee court found plaintiff was barred from pursuing any claim based upon the conflict of

7    interest because of his failure to seek his prior counsel's disqualification from representing the

8    adverse party "at the earliest practical opportunity."  The court relied upon a decision from a court

9    in Hawaii, finding "'in the absence of evidence of actual prejudice, one, who is entitled to object to

10   an attorney representing an opposing party on the ground of conflict of interest but who knowingly

11   refrains from asserting it promptly in order to reserve it for the most expedient time, may be

12   deemed to have waived that right.'"  Id. at 411 (quoting Lau v. Valu-Bilt Homes, Ltd., 582 P. 2d

13   195, 204 (Haw. 1978)). Because the plaintiff knew of the potential conflict of interest involving

14   his prior attorney, was represented by counsel, and failed to move for disqualification of counsel

15   from representing the adverse party, the firm could have reasonably believed its continued

16   representation of the adverse party was acceptable to plaintiff.  Id.

17         Similarly, in Wilbourn, 687 So. 2d at 1217, the Mississippi court found plaintiff's claims

18   for breach of fiduciary duty were barred by his affirmative failure to request disqualification of his

19   former counsel during the underlying lawsuit which formed the basis of the breach of fiduciary

20   duty action.  The underlying court affirmatively asked plaintiff if he wanted his former counsel

21   disqualified and plaintiff responded negatively, stating any confidence had already been breached

22   and disqualification would hinder the trial. Under such circumstances, where plaintiff failed to

23   move for disqualification at the earliest practical opportunity, the Mississippi court found plaintiff

24   was barred from pursuing his breach of fiduciary duty claim.  Id.; see also Barre v. St. Martin, 636

25   So. 2d 1061, 1064 (La. 1994) (court found plaintiff waived her right to object to her former

26   attorney's representation of a co-owner whose interests were adverse in a subsequent proceeding,

27   barring her claim for breach of fiduciary duty).

28         As Foley points out, Vaxiion knew at least in November of 2004 that Foley also

- 14 -

07cv280

1   represented EnGeneIC with regard to its pursuit of patent rights regarding minicell technology.

2   However, Vaxiion never sought Foley's disqualification from representing EnGeneIC.  Vaxiion

3   never even suggested to Foley that it should terminate its representation of EnGeneIC until August

4   of 2007, when Vaxiion's counsel objected to the production of certain laboratory notebooks to

5   Foley's counsel in light of Foley's continued representation of EnGeneIC.  [Garner Decl., ¶ 13.]

6   Vaxiion's counsel opposed a motion to compel production of laboratory notebooks on the basis of

7   Foley's continued representation of EnGeneIC and extensively discussed Foley's duties under

8   California Rules of Professional Conduct.  [Doc. No. 30, pp. 3-5.]  In that opposition, Vaxiion's

9   counsel went so far as to threaten to report the situation to the State Bar of California and the

10  District of Columbia as well as the patent bar. [Id., p. 5, fn.1.]  Nonetheless, it appears Vaxiion

11  took no action to disqualify Foley from representing EnGeneIC with regard to any of the pending

12  patent matters. There is nothing to suggest Vaxiion, which was represented by counsel, even asked

13  Foley to cease its representation of EnGeneIC.

14      In opposition, Vaxiion argues there is no waiver because this is not a disqualification

15  proceeding. In addition, Vaxiion argues that the rules on waiver are designed to prevent prejudice

16  to the opposing party, in this case EnGeneIC, such that finding a waiver on Vaxiion's claims for

17  breach of fiduciary duty would not further the purpose of requiring prompt proceedings on

18  disqualification. Vaxiion argues that by the time the dual representation was discovered, the

19  damage had been done, and nothing could have undone Foley's 2001 conduct (i.e. missing the

20  PCT Application deadline). Finally, Vaxiion argues that soon after the missed deadline, the parties

21  executed a tolling agreement to prevent its legal claims from running while it pursued an

22  investigation of the cause of the missed deadline.

23      Although the Court has some concern about Vaxiion's failure to promptly seek Foley's

24  disqualification from representing EnGeneIC, neither the law nor the facts in this case are

25  sufficiently developed at this point in the litigation to permit summary judgment based upon

26  waiver.  Foley has not cited any California authority supporting its claim that the waiver doctrine

27  applies in the context of a claim of breach of fiduciary duty.  In addition, although Vaxiion knew

28  that Foley represented EnGeneIC on its October 15, 2001 PCT Application, there is nothing in the

1   record to indicate Vaxiion knew of Foley's continued representation of EnGeneIC before the

2   USPTO in 2006 and 2007.  As a result, the Court finds Foley is not entitled to summary judgment

3   on Vaxiion's breach of fiduciary duty claim based upon waiver.

4   2.      *Breach of Contract*

5           Vaxiion alleged in its complaint that Foley failed to perform its obligations under the

6   parties' legal services contract by failing to timely file the international patent application and by

7   its concurrent dual representation of Vaxiion and EnGeneIC. [Complaint, ¶¶ 25 and 26.]  Foley

8   moves for summary judgment, arguing Vaxiion cannot show any damages because there is no

9   evidence Vaxiion's confidences were shared or disclosed to EnGeneIC's attorneys or that Foley

10  missed the PCT filing deadline to benefit EnGeneIC. As with the breach of fiduciary duty claim,

11  the Court finds Foley's argument is contrary to California law.

12          As Foley properly asserts, "[c]ausation of damages in contract cases, as in tort cases,

13  requires that the damages be proximately caused by the defendant's breach, and that their causal

14  occurrence be at least reasonably certain."  Vu v. California Commerce Club, Inc., 58 Cal. App. 4th

15  229, 233 (1997).  However, Foley's motion is based entirely upon the rationale that the law

16  requires Vaxiion to demonstrate the actual sharing or disclosure of confidential information, or

17  alternatively that Foley missed the PCT deadline to benefit EnGeneIC.  Because, as explained

18  above, California law does not require a plaintiff in the case of a dual or subsequent representation

19  to prove actual disclosure or use of confidences, but only that the plaintiff suffered some

20  "damages," Foley is not entitled to summary judgment on Vaxiion's breach of contract cause of

21  action.

22  3.      *Interference with Prospective Economic Advantage*

23          Vaxiion alleges in its complaint that Foley knew Vaxiion possessed a significant economic

24  advantage in obtaining an international patent for the minicell technology, and that Foley

25  negligently or intentionally interfered with that advantage by successfully prosecuting an

26  international patent application on behalf of EnGeneIC.  [Complaint, ¶¶ 29-30.]  Foley argues it is

27  entitled to summary judgment on Vaxiion's claim for interference with economic advantage

28  because Vaxiion cannot show an existing economic relationship with a third party, of which Foley

knew.

The tort of intentional interference with economic relations has the following elements:

(1) an economic relationship between plaintiff and a third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) the defendant's intentional and wrongful conduct designed to interfere with or disrupt this relationship; (4) interference with or disruption of this relationship; and (5) economic harm to the plaintiff proximately caused by the defendant's wrongful conduct.

Sole Energy Co. v. Petrominerals Corp., 128 Cal. App. 4th 212, 241 (2005).  Negligent interference with economic relations has the same elements, except the interference must be "negligent." J'Aire Corp. v. Gregory, 24 Cal. 3d 799, 805 (1979).

The first element requires a plaintiff to establish a specific, existing economic relationship with a third party. Salma v. Capon, 161 Cal. App. 4th 1275, 1291 (2008) (affirming dismissal of claim of interference with economic advantage because although plaintiff alleged he had existing relationships with lenders who held his deeds of trust, there was no evidence in the record plaintiff tried to refinance the property with these lenders or that any such attempts were disrupted by defendant's conduct); Panavision Int'l v. Toeppen, 945 F. Supp. 1296, 1305 (C.D. Cal. 1996) (in action alleging defendant intentionally registered plaintiff's trademarks as his Internet domain names for the purpose of obtaining payment for use of the name, court granted summary judgment on plaintiff's claim for intentional interference with economic advantage claim under California law because plaintiff failed to present any evidence of a specific economic relationship with customer or customers containing the probability of future economic benefit).

Vaxiion argues that at the time of the missed filing deadline, it had an existing relationship with the World Intellectual Property Organization ("WIPO") of which Foley was aware. [Declaration of Roger Sabbadini in Support of Opposition to Motion for Summary Judgment on Conflicts-Related Claims ("Sabbadini Decl."), Doc. No. 118-29, ¶ 2.]  However, Vaxiion's relationship with the WIPO is not of the type which would support a claim for interference with economic advantage.  The WIPO is "a specialized agency of the United Nations" which performs administrative services enabling users to file PCT applications and other international registrations

07cv280

1   for intellectual property.[6]  There was no "economic" relationship between Vaxiion and the WIPO.

2   As a result, Plaintiff's relationship with the WIPO does not support its claim for interference with

3   economic advantage.  See Blank v. Kirwan, 39 Cal. 3d 311, 330 (1985) (where plaintiff sued

4   defendant for interfering with his attempt to obtain license for poker club, plaintiff's relationship

5   with the city was not "economic" so as to support plaintiff's claim of interference with economic

6   advantage; court also clarified the tort of interference with economic advantage is intended to

7   support ordinary commercial dealings, "not the 'expectancies,' whatever they may be, involved in

8   the governmental licensing process.")

9         In addition, Vaxiion states that as of the time of the missed PCT filing deadline, the

10   company was capitalized by Western States Financial group, a third party investment company.

11   [Sabbadini Decl., ¶ 3.]  Vaxiion states it intended to request and eventually receive additional

12   funding from Western States to develop its technology.  [Id.]  Although Vaxiion's papers state the

13   missed PCT deadline "disrupted the relationship between Vaxiion and Western States and resulted

14   in decreased funding for Vaxiion's research" [Opposition to Motion for Summary Judgment on

15   Conflict-Related Claims, p. 18], this statement is not supported by any evidence in the record.

16         Because Vaxiion has failed to demonstrate it had an existing economic relationship with a

17   third-party, which was in some manner adversely impacted by the late filing of the PCT

18   Application, the Court finds Foley is entitled to summary judgment on its cause of action for

19   intentional interference with economic relations.

20   *4.*     *Constructive Fraud*

21         Vaxiion's complaint alleges Foley "concealed material facts from Plaintiff, including but

22   not limited to the fact of Defendants' representation of EnGene[IC] and Defendants' submission of

23   EnGene[IC]'s international patent application. Such concealment violates the Defendants'

24   fiduciary duty to Plaintiff."  Despite the fact Plaintiff titles this cause of action "Constructive

25   Fraud," Foley argues Vaxiion in fact has alleged a cause of action for fraud based on concealment,

26   a claim for which there is no evidentiary support.  Foley argues Vaxiion has failed to produce any

27   

28         [6]Information regarding the nature of the WIPO and its core tasks was obtained from the
      organization's website, http://www.wipo.int.

1    evidence that Foley *intentionally* concealed from Vaxiion that Foley represented EnGeneIC and/or

2    filed EnGeneIC's PCT Application, or that Foley did any of these acts with the *intent* to defraud

3    Vaxiion.

4            In opposition, however, Vaxiion makes clear it is not claiming fraudulent concealment, but

5    instead alleges constructive fraud pursuant to established California law.  See Byrum v. Brand,

6    219 Cal. App. 3d 926, 937 (1990) (setting forth standard of claim of breach of fiduciary duty based

7    upon constructive fraud under Cal. Civ. Code § 1573[7]).  Such a cause of action does not require

8    Vaxiion to demonstrate intentional concealment or intent to defraud.  Salahutdin v. Valley of

9    California, Inc., 24 Cal. App. 4th 555, 562 (1994) (generally, constructive fraud arises out of an

10   existing fiduciary or confidential relationship and does not require any showing the conduct is

11   otherwise fraudulent or intentional).  Therefore, Foley is not entitled to summary judgment on

12   Vaxiion's claim for constructive fraud.

13   *5.*      *Punitive Damages*

14           Finally, Foley moves for summary judgment on Vaxiion's claim for punitive damages.

15   Foley argues Vaxiion has not produced clear and convincing evidence Foley is guilty of

16   "oppression, fraud, or malice."  Cal. Civ. Code § 3294(c).  Vaxiion opposes the motion, arguing

17   Foley violated its ethical responsibilities when it intentionally failed to follow its own procedures

18   for processing client intakes and clearing potential conflicts and failed to provide trained and

19   knowledgeable help for the filing of a PCT application. Finally, Vaxiion argues certain seminars

20   given at Foley after the missed filing deadline and after Foley discovered the dual representation

21   show that Foley knew it had acted inappropriately.

22   _____

23        [7]The court explained:
          The statute which governs claims of breach of fiduciary duty is [Civil Code] section

24        1573, which provides: "Constructive Fraud. Constructive fraud consists: [¶] 1. In
          any breach of duty which, without an actually fraudulent intent, gains an advantage

25        to the person in fault, or any one claiming under him, by misleading another to his
          prejudice, or to the prejudice of any one claiming under him; or, [¶] 2. In any such

26        act or omission as the law specially declares to be fraudulent, without respect to
          actual fraud."  As a general matter, most acts which constitute a breach of fiduciary

27        will support a cause of action for constructive fraud.  Byrum, 219 Cal. App. 3d at
          937.

28

1        Pursuant to Cal. Civ. Code § 3294, punitive damages may be awarded in an action "where

2   it is proven by clear and convincing evidence that the defendant has been guilty of oppression,

3   fraud, or malice ...."  In this context, "malice" is defined as "conduct which is intended by the

4   defendant to cause injury to the plaintiff or despicable conduct which is carried on by the

5   defendant with a willful and conscious disregard of the rights or safety of others."  California

6   courts have described "despicable conduct" as conduct which is "so vile, base, contemptible,

7   miserable, wretched or loathsome that it would be looked down upon and despised by ordinary

8   decent people."  <u>American Airlines, Inc.</u>, 96 Cal. App. 4th at 1050 (quoting Cal. BAJI 14.72.1)

9   (additional internal citations omitted).  In determining whether Foley is entitled to summary

10  judgment on Vaxiion's claim for punitive damages, the court should apply the "clear and

11  convincing evidence" standard.  <u>Basich v. Allstate Ins. Co.</u>, 87 Cal. App. 4th 1112, 1120 (2001) (in

12  insurance bad faith action, trial court properly applied clear and convincing evidence standard in

13  evaluating defendant's motion for summary judgment on punitive damages).

14       Vaxiion cannot recover punitive damages on its breach of contract claim.  Cal. Civ. Code

15  § 3294(a) (punitive damages available only in actions "for breach of an obligation *not arising from*

16  *contract*").  In addition, simple negligence standing alone cannot support an award of punitive

17  damages.  <u>Jackson v. Johnson</u>, 5 Cal. App. 4th 1350, 1353 (1992); <u>American Airlines</u>, 96 Cal. App.

18  4th at 1050-51 (finding trial court properly granted summary judgment on punitive damages claim

19  in legal malpractice action and breach of fiduciary duty action where plaintiff did not come

20  forward with any evidence that counsel's conduct rose to the level justify such an award) .

21       In opposition to Foley's motion, Vaxiion identifies three categories of conduct which

22  support its claim for punitive damages.  First, Vaxiion argues Foley Attorney Richard Warburg

23  instructed the firm not to process a conflict check for Vaxiion.  In addition, although Foley D.C.

24  Attorney Stephen Bent provided conflict paperwork for EnGeneIC, Vaxiion argues the paperwork

25  either failed to properly describe the nature of EnGeneIC's work or Richard Warburg failed to

26  review the "green sheets" he was given that would have disclosed the competing nature of

27  EnGeneIC's work.  Vaxiion states "Foley has claimed privilege sufficient to prevent discovery of

28  the true reason, but it is clear that the system was not followed."  Vaxiion states there was no

1   discussion between the two attorneys about the conflicting business, but instead the attorneys

2   "learned of each other's existence years after the clients had already been retained and patent

3   applications filed."  Vaxiion relies upon a portion of the Foley litigation manual which warns

4   employees of the potential problems of inadvertent representation of clients with conflicting

5   interests, and states (without citation to anything in the record) that "it is clear that the two senior

6   partners who committed the acts in the complaint did so with full knowledge and intent of the

7   dangers that attach to clients when such acts are ignored."

8          Second, Vaxiion argues Attorney Drew Granston's level of training and experience in

9   handling PCT filings "was so lacking that while he admitted to knowing that the Manual of Patent

10  Examining Procedure, which would have disclosed to him the requirements for a PCT filing, was

11  the 'Bible' in the USPTO, he also admitted that he never used it."  Vaxiion argues Attorney

12  Granston conceded, in his deposition, that he could have preserved all of Vaxiion's rights if he had

13  simply filed the PCT, even on the wrong size paper, instead of the U.S. application. [Exhibit L to

14  Vaxiion's Opposition to Foley & Lardner's Motion for Partial Summary Judgment on Conflicts-

15  Related Claims, pp. 291-92.]

16         Finally, Vaxiion argues Foley knew it was doing wrong as evidenced by its "post-

17  malpractice seminars" regarding "PCT Training" and "Avoiding Legal Malpractice."  In June

18  2002, right after the Vaxiion missed deadline, Foley held an internal training regarding PCT

19  applications.  That seminar addressed questions such as "Why do I need to know PCT" and

20  "Reasons for using PCT" and taught attendees the minimum requirements for filing a PCT

21  application.  In addition, in September and November 2003, after the conflict between Vaxiion and

22  EnGeneIC became known, Foley held two more seminars, with identical content, regarding

23  avoiding legal malpractice. The first two of the causes of malpractice addressed were missed filing

24  deadlines and conflicts of interest. In opposition to the motion for summary judgment on punitive

25  damages, Vaxiion argues this evidence demonstrates "Foley's post-malpractice ... awareness that

26  what was done was wrong."

27         Viewing the evidence in the light most favorable to Vaxiion, the Court finds Vaxiion has

28  not come forward with clear and convincing evidence sufficient to support its claim for punitive

1   damages.  Although Vaxiion argues Attorney Richard Warburg failed to conduct a conflicts check

2   before taking on Vaxiion as a client, Vaxiion does not explain how that failure could be

3   characterized as "malicious."  It was not Foley's acceptance of Vaxiion as a client which resulted

4   in any conflict of interest; instead, the only relevant question is what conflict check was conducted

5   before Foley D.C. Attorney Stephen Bent accepted representation of EnGeneIC.  Vaxiion cites *no*

6   *evidence* regarding what procedures Foley took to determine conflicts related to EnGeneIC.

7   Vaxiion provides *no evidence* to support its claim that Attorney Richard Warburg received notice

8   (by way of circulation of a "green sheet") and failed to do anything about the conflict.

9       Furthermore, to the extent Vaxiion relies upon Attorney Granston's alleged lack of

10  experience, Vaxiion does not explain how that lack of experience was so grossly inadequate as to

11  constitute "oppression, fraud or malice."  There are genuine issues of material fact in this case

12  regarding who is at fault for missing the PCT Application deadline.  In opposition to the current

13  motion, Vaxiion cites *no evidence* supporting the conclusion that Foley should have been on notice

14  that Granston's abilities were so lacking that the missed deadline was inevitable. There is no

15  evidence Attorney Granston intentionally missed the deadline to benefit Foley's other client,

16  EnGeneIC, or for any other reason.

17      Finally, the evidence regarding training seminars, even if admissible, does not demonstrate

18  Foley acted with malice or in a despicable manner.  The fact a law firm knows generally of the

19  consequences of missing a deadline, or of representing clients with antagonistic interests, does not

20  support Vaxiion's claim in this case that Foley acted with "oppression, fraud, or malice."

21      Vaxiion has failed to produce clear and convincing evidence in support of its claim for

22  punitive damages against Foley.  Therefore, Foley is entitled to summary judgment on Vaxiion's

23  claim for punitive damages.

24                                          *Motion to Strike*

25      Pursuant to Fed. R. Evid. 407, Foley moves to strike Exhibits N and O to the Declaration of

26  Karen Frostrom filed in support of Vaxiion's opposition to this summary judgment motion on

27  conflicts-related claims. Foley also moves to strike one section of Vaxiion's opposition brief,

28  entitled "Foley Knew It Was Doing Wrong," Section II(F)(3), page 21, line 9 through page 22, line

14, which addresses Foley's motion for summary judgment on punitive damages.

The Court finds merit in Foley's argument that the cited evidence is inadmissible under Fed. R. Evid. 407 for the purposes proffered by Vaxiion regarding these summary judgment motions. However, because the Court has concluded that Foley is entitled to summary judgment on Vaxiion's claim for punitive damages even if the evidence of Foley's subsequent actions is considered, the Court denies the motion to strike as moot.

### *Conclusion*

For the reasons set forth herein, the Court GRANTS Foley's motion for partial summary judgment on Vaxiion's fourth cause of action for interference with economic advantage, GRANTS Foley's motion for partial summary judgment on Vaxiion's claim for punitive damages, and DENIES Foley's motion for partial summary judgment on Vaxiion's second, third, and fifth causes of action for breach of fiduciary duty, breach of contract, and constructive fraud [Doc. No. 85].  The Court DENIES AS MOOT Vaxiion's motion to strike [Doc. No. 129].

**IT IS SO ORDERED**.

**DATED:  December 4, 2008**

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**

07cv280