# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VAXIION THERAPEUTICS, INC.,<br><br>          Plaintiff,<br>   vs.<br><br>FOLEY & LARDNER LLP and DOES 1 through 20, inclusive,<br><br>          Defendants. | CASE NO. 07cv00280-IEG (RBB)<br><br>**ORDER GRANTING DEFENDANT'S MOTION *IN LIMINE***<br><br>**[Doc. No. 182]** |

Defendant Foley & Lardner, LLP ("Foley") moves the Court *in limine*[1] to exclude the introduction of evidence arising from a June 2008 meeting in Sydney, Australia between the parties and EnGeneIC PTY Ltd. ("EnGeneIC"). Plaintiff Vaxiion Therapeutics, Inc. ("Vaxiion") has filed an opposition and Foley has filed a reply. EnGeneIC has submitted a letter brief in which it requests, *inter alia*, attorney's fees and costs.[2] Vaxiion has filed an objection to the letter brief. The Court heard oral argument on Foley's motion on Monday, April 27, 2009. For the reasons stated herein, the Court grants the motion, and denies EnGeneIC's request for fees and costs.

## BACKGROUND

The factual and procedural history of this case is familiar to the parties and need not be repeated at length herein. Vaxiion brings suit against Foley over a missed Patent Cooperation Treaty ("PCT")

---

[1] Foley has filed a motion *in limine* several months before trial because a decision from the Court now would prevent additional expenses from being incurred with regard to this issue (i.e. rebuttal expert reports and re-deposition of Plaintiff's damages expert). (Motion at 10-11.)

[2] The Court admitted EnGeneIC's counsel, Jorge A. Goldstein *pro hac vice* for the limited purpose of speaking on EnGeneIC's behalf at the hearing on the instant motion.

1  filing deadline related to Vaxiion's international patent applications seeking protection for minicell
2  technology. Foley also allegedly breached its fiduciary duty to Vaxiion when it represented EnGeneIC,
3  an Australian company, and prosecuted EnGeneIC's patent applications, some of which included
4  minicell technology.  Vaxiion claims that as a result of the missed PCT deadline and the alleged
5  conflict, EnGeneIC captured some of the international patent rights in minicells to which Vaxiion was
6  originally entitled.

7  On March 16, 2007, Magistrate Judge Brooks held an Early Neutral Evaluation Conference
8  with Plaintiff and Defendant.  At the conference Plaintiff's counsel suggested the parties might be able
9  to reach a resolution to the dispute if Vaxiion entered into an arrangement with EnGeneIC to allow
10 Vaxiion to license or use EnGeneIC's minicell technology outside of the United States. [Declaration
11 of Robert E. Gooding, Jr. ISO Defendant's Motion in Limine ("Gooding Decl."), Doc. No. 182-14, ¶
12 1.] The parties agreed to attempt to schedule a joint meeting with EnGeneIC, and to keep the Court
13 informed of their progress.  (Id. ¶, 2.)

14 The parties agreed to several conditions for the meeting in Australia, including a stipulated
15 protective order ("Protective Order,") which Magistrate Judge Brooks signed on May 16, 2008. (Doc.
16 No. 74.)  The Protective Order states that "any information exchanged . . . in connection with any
17 discussion contemplated by this Agreement shall not be offered or received in evidence in any legal
18 action or proceeding as an admission of liability, wrongdoing **or for any other purpose** by either
19 Vaxiion or Foley."  (Protective Order at 4.)  The parties and EnGeneIC also entered into a
20 Confidentiality and Non-Disclosure Agreement, whose terms applied to EnGeneIC and were nearly
21 identical to those of the Protective Order. (Ex. B. to Gooding Decl.)

22 On June 24, 2008 the parties traveled to Sydney, Australia to meet with EnGeneIC.  At oral
23 argument, Vaxiion's counsel explained that Vaxiion spent considerable time at the Sydney meeting
24 explaining its science to EnGeneIC.  The parties also discussed, in general terms, Vaxiion's and
25 EnGeneIC's interests and willingness to enter into a business arrangement or license agreement.
26 (Gooding Decl., ¶ 9.)  At the end of the meeting, the parties decided EnGeneIC would present a term
27 sheet ("term sheet") to Vaxiion and Foley outlining the parameters under which EnGeneIC would
28 license its technology to Vaxiion. (Id., ¶ 10.)  EnGeneIC's U.S. counsel sent the proposal to Vaxiion

and Foley on July 18, 2008. The letter contained a statement below the subject line stating: "Subject to the CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT of May 13, 2008 and to the ORDER entered on May 16, 2008, granting the JOINT MOTION TO PROTECT CONFIDENTIALITY OF DISCUSSIONS." (Ex. C to Gooding Decl.) On the same date, EnGeneIC's counsel also sent a letter to Magistrate Judge Brooks stating that the Sydney meeting had taken place and that EnGeneIC had offered Vaxiion a license. (Ex. D to Gooding Decl.) The letter did not enclose the term sheet, and noted both Vaxiion and Foley had agreed to keep the term sheet confidential.

Vaxiion nevertheless concedes it "provided [the term sheet] to its damages experts [Louis Berneman and Michael Lasinski] to assist them in evaluating the losses Vaxiion sustained through the loss of [its] foreign intellectual property." (Opp. at 2.) Messrs. Berneman and Lasinski issued expert reports on May 6, 2008 and supplemental expert reports on June 13, 2008. Additionally, each expert issued a second supplemental report, respectively on October 30, 2008 and October 31, 2008.[3] In his second supplemental report, Mr. Berneman states that, as his sole assignment, Vaxiion asked him:

> to provide [his] expert opinion regarding the lost value to Vaxiion of a proposed, irrevocable, royalty-free, exclusive, worldwide license to make, use, and sell products under Vaxiion's patent rights in all fields other than vaccines for infectious diseases, as expressed in Section 3(b) of the Outline of Agreement [between EnGeneIC and Vaxiion].

("Berneman 2d Supp. Report," Ex. G to Garner Decl. at 3.) In Mr. Lasinski's second supplemental report, he states:

> Since the issuance of my Initial Reports, I have been provided with the following additional information which I have utilized in the analysis contained in this report: [¶] 1. The July 18, 2008 Outline of Agreement between EnGeneIC and Vaxiion (the "EnGeneIC Proposal").

("Lasinski 2d Supp. Report," Ex. H to Garner Decl.) Lasinski accordingly calculates the "present value of the expected costs Vaxiion will have to pay under the EnGeneIC Proposal" related to the development and sale of three specified vaccines. (Lasinski 2d Supp. Report at 8.)

On February 23, 2009 Vaxiion requested that EnGeneIC execute an affidavit stating the Protective Order "did not extend to the financial terms of the [term sheet]." (EnGeneIC Letter Brief

---

[3] Although Foley does not raise the argument in its motion, the deadline for supplemental expert reports expired on June 13, 2008. (Amended Scheduling Order at 1, Doc. No. 58.) Vaxiion served the second supplemental expert reports in late October, 2008, over four months after the deadline. Vaxiion has offered no explanation or showing of good cause for missing the deadline.

at 5.) EnGeneIC refused to provide the affidavit because "it disagreed with Vaxiion's belated attempt to limit the scope of the Order." (Id.) EnGeneIC attached an email thread between its counsel and Vaxiion's counsel documenting this exchange. (Exs. A and B to EnGeneIC's Letter Brief.)

## DISCUSSION

Defendant moves the Court *in limine* to exclude the introduction of: (1) any evidence related to the parties' Sydney, Australia meeting with EnGeneIC, including the term sheet; and (2) any expert opinion based on the meeting or the term sheet, including Lasinski and Berneman's second supplemental reports. Defendant's motion is based on two arguments: (1) Vaxiion's use of the term sheet violates the Protective Order; and (2) Vaxiion's use of the term sheet violates Federal Rule of Evidence 408. The Court examines each argument in turn.

I.  Violation of the Protective Order

Foley argues the experts' use of the term sheet in their second supplemental reports violates the Protective Order because the information contained in the term sheet is unquestionably information exchanged "in connection with . . . discussions contemplated by [the Protective Order]." (Motion at 8.) Plaintiff responds that the Protective Order merely prohibits the admission of the *term sheet itself* into evidence, and does not preclude its experts from using the *data* in the term sheet. Plaintiff argues that it always intended to use the information as the basis for its experts' damages calculations, and that the Protective Order does not preclude this action. (Opp. at 3-4.)

The Protective Order states, in relevant part:

> WHEREAS, in the course of the Early Neutral Evaluation Conference overseen by Magistrate Judge Ruben B. Brooks, Vaxiion and Foley have discussed having a meeting with EnGeneIC to consider a possible business arrangement between Vaxiion and EnGeneIC that could lead to a resolution of the dispute between Vaxiion and Foley and a settlement of Vaxiion's claims against Foley;
>
> WHEREAS, nothwithstanding that EnGeneIC and Vaxiion may be direct competitors in certain fields relating to minicells, EnGeneIC, through its counsel, has agreed to engage in such discussions with Vaxiion and Foley, and [the parties] have agreed to engage in such discussions with EnGeneIC and each other, but only on the condition that such discussions be treated as confidential by [Vaxiion, Foley, and EnGeneIC], and that **nothing said or produced in such discussions be used in any subsequent proceeding by** [Vaxiion, Foley, or EnGeneIC].
>
> WHEREAS, Vaxiion and Foley agree that any . . . information disclosed to them by EnGeneIC before or after the date of this Joint

> Motion about the minicell technology or about EnGeneIC's plans to use the minicell technology are confidential and proprietary, and that the disclosure of such [information] would be damaging to EnGeneIC if it became public . . . .
>
> NOW, THEREFORE, in consideration of [Vaxiion, Foley, and EnGeneIC's] willingness to meet, [they] stipulate and agree, and move the court, as follows:
>
> 1. For purposes of this Agreement, "EnGeneIC Proprietary information" includes, but is not limited to . . . development plans for existing minicell technology . . . and includes all information relating to minicells disclosed by EnGeneIC to Vaxiion in any form whether or not identified as proprietary by EnGeneIC.
>
> 2. Vaxiion and Foley agree to treat as confidential EnGeneIC Proprietary information exchanged during any meetings contemplated by this Agreement. Vaxiion and Foley further agree that, unless ordered to do so by a court of competent jurisdiction, Vaxiion or Foley may not disclose or use EnGeneIC Proprietary information without the express written consent of EnGeneIC.
>
> […]
>
> 4. "Vaxiion and Foley agree that this Agreement, any action taken pursuant to this Agreement, and/or any information exchanged or statements made at or in connection with any discussion contemplated by this Agreement shall not be offered or received in evidence in any legal action or proceeding as an admission of liability, wrongdoing **or for any other purpose** by either Vaxiion or Foley."

Protective Order at 2-4 (emphasis added).

Vaxiion violated the Protective Order by providing the confidential term sheet information to its damages experts without obtaining a court order or consent from EnGeneIC. The term sheet contains the parameters under which EnGeneIC would possibly license its minicell technology to Vaxiion. These parameters include, *inter alia*, commercially sensitive information such as the fields in which EnGeneIC is willing to license its technology to other companies. This information is the type of "EnGeneIC Proprietary Information" contemplated by the Protective Order because it falls under "development plans for existing . . . minicell technology" or at the very least "all information relating to minicells disclosed by EnGeneIC to Vaxiion in any form whether or not identified as proprietary by EnGeneIC."

Moreover, admitting Berneman's and Lasinski's testimony at trial would further violate the Protective Order, to the extent their damages estimates include information provided in the term sheet. The term sheet and its contents were derived from the parties' discussion about licensing at their

1  meeting in Australia.  Therefore, the term sheet contains "information exchanged or statements made
2  . . . in connection with [a] discussion contemplated by [the] Agreement."  Plaintiff's argument that the
3  Protective Order only prohibits admission of the term sheet itself into evidence is meritless, because
4  *information* in the term sheet is also within the Protective Order.  The Protective Order forbids this
5  information from being received into evidence **for any purpose**; "any purpose" undoubtedly includes
6  use by expert witnesses in damages calculations.

7  Vaxiion further argues that even if the information in the term sheet is inadmissible at trial, Fed.
8  R. Civ. P. 703[4] allows expert witnesses to rely on inadmissible evidence.  Specifically, Vaxiion
9  contends that experts may "reasonably rely [on] an opinion expressed by another expert," and
10 "EnGeneIC is the best expert to provide an opinion on how much it would cost a competitor to buy into
11 EnGeneIC's IP space abroad."  (Opp. at 5.)  Vaxiion cites two out-of-circuit cases in support of its
12 argument: Ohio Envtl. Dev. Ltd. P'ship v. Envirotest Sys. Corp., 478 F. Supp. 2d 963, 975 (N.D. Ohio
13 2007) (finding "if an expert's consultation of another expert's opinion is a resource reasonably relied
14 upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or
15 data need not be admissible in evidence in order for the opinion or inference to be admitted.") (citation
16 omitted); and Concerned Area Residents for the Env't v. Southview Farm, 834 F. Supp. 1422, 1436
17 (W.D.N.Y. 1993) (finding Rule 703 "has been held to permit an expert in one field to base on opinion
18 in part on the opinions of other experts in other fields.")

19 Vaxiion's argument is meritless.  First, EnGeneIC is not an expert retained to opine upon any
20 issue in this case.  Messrs. Berneman and Lasinski therefore were not relying on "another expert's"
21 opinion when they used information from the term sheet in writing their second supplemental reports.
22 Second, Foley correctly argues that while experts may rely on inadmissible evidence as a general rule,
23 nothing in Rule 703 suggests that an expert may rely on evidence the Court has **expressly precluded**.

---

26  [4] Rule 703 provides: "[...] If of a type reasonably relied upon by experts in the particular field
27 in forming opinions or inferences upon the subject, the facts or data need not be admissible in
evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise
28 inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the
court determines that their probative value in assisting the jury to evaluate the expert's opinion
substantially outweighs their prejudicial effect."  Fed. R. Civ. P. 703 (2009).

1  The Court therefore grants Foley's motion *in limine*, in light of Vaxiion's violation of the Protective Order and the potential for continued violations should information from the term sheet be received into evidence at trial. The Court grants the motion pursuant to its inherent power to enforce its own orders. Aloe Vera of Am., Inc. v. United States, 376 F.3d 960, 964-965 (9th Cir. 2004) ("All federal courts are vested with inherent powers enabling them to manage their cases and courtrooms effectively and to ensure obedience to their orders. . . . As a function of this power, courts can dismiss cases in their entirety, bar witnesses, award attorney's fees and assess fines.")

II.  Violation of Fed. R. Evid. 408

Fed. R. Evid. 408 provides an independent basis for the Court's decision to grant Foley's motion. Foley correctly argues that the experts' use of the term sheet in their supplemental reports violates " the literal terms of [Fed. R. Evid.] 408 and the public policy behind it." (Motion at 9.)

Fed. R. Evid 408 provides:

> Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction: (1) furnishing or offering or promising to furnish–or accepting or offering or promising to accept–a valuable consideration in compromising or attempting to compromise the claim; and (2) conduct or statements made in compromise negotiations regarding the claim . . . .

Fed. R. Evid. 408(a) (2009).

Plaintiff argues Rule 408 does not protect the term sheet because EnGeneIC and Vaxiion have no claims against one another, and the legal disputes in this case are strictly between Vaxiion and Foley. In support, Plaintiff cites Armstrong v. HRB Royalty, Inc., 392 F. Supp. 2d 1302, 1304-05 (S.D. Ala. 2005) ("Rule 408 excludes evidence of settlement offers only if such evidence is offered to prove liability for or invalidity [or amount] of the claim under negotiation. . . . Rule 408 unambiguously requires that the claim as to which a settlement offer was made and the claim at issue in the litigation in which the offer is proffered as evidence must be the same claim.") and Towerridge, Inc. v. T.A.O., Inc., 111 F.3d 758, 770 (10th Cir. 1997) ("Rule 408 does not require the exclusion of evidence regarding the settlement of a claim different from the one litigated, though admission of such evidence may nonetheless implicate the same concerns of prejudice and deterrence of settlements which underlie Rule 408.") Foley characterizes the Sydney meeting as a "settlement meeting among [Vaxiion],

[Foley], and [EnGeneIC]" (Motion at 1,) and argues the term sheet is a product of that settlement meeting.

The Court rejects Vaxiion's argument, and finds Rule 408 protects the term sheet and its contents. Despite Vaxiion's attempts to characterize the Sydney meeting as limited to discussion of science and potential business arrangements, the meeting and EnGeneIC's resulting license offer were a product of Vaxiion and Foley's joint efforts to settle the case. In fact, at oral argument Plaintiff's counsel belabored the point that Vaxiion was unable to secure a meeting with EnGeneIC without Foley's cooperation. Moreover, one of the main recitals of the parties' stipulated protective order states:

> "WHEREAS, in the course of the Early Neutral Evaluation Conference overseen by Magistrate Judge Ruben B. Brooks, Vaxiion and Foley have discussed having a meeting with EnGeneIC to consider a possible business arrangement between Vaxiion and EnGeneIC that could lead to a resolution of the dispute between Vaxiion and Foley and a settlement of Vaxiion's claims against Foley[.]"

(Protective Order at 2.)

In this case, Vaxiion makes a claim of liability and damages against Foley; specifically it contends it lost valuable intellectual property rights as a result of Foley's actions. The term sheet summarizes a licensing offer that Vaxiion now seeks to use as a basis for its damages claims. Because EnGeneIC generated the term sheet pursuant to a settlement attempt between the parties, Vaxiion's use of the sheet in its damages calculations is an impermissible attempt to admit statements made in compromise negotiations to prove the amount of a disputed damages claim.

Finally, allowing into evidence the term sheet or its contents would not promote the public policy favoring the compromise and settlement of disputes, because it would discourage candid discussions in compromise negotiations such as the one at issue in this case. See United States v. Contra Costa County Water Dist., 678 F.2d 90, 92 (9th Cir. 1982) ("By preventing settlement negotiations from being admitted as evidence, full and open disclosure is encouraged, thereby furthering the policy toward settlement.") Foley openly cooperated in arranging and participating in the Sydney meeting because of its desire to resolve this case out of court. Foley would not have made these efforts if it had known that Vaxiion would use evidence resulting from the meeting against it at trial.

III.     EnGeneIC's Letter Brief

EnGeneIC has submitted a letter brief asserting its position that the Protective Order prohibits Vaxiion from disclosing EnGeneIC proprietary information, such as the information in the term sheet. EnGeneIC has also requested that the Court award its costs for responding to Vaxiion's actions, including reasonable attorney's fees. EnGeneIC has not intervened as a party in this action, and has not provided any legal support for its entitlement to reimbursement. The Court denies EnGeneIC's request for fees and costs.

## CONCLUSION

For the foregoing reasons, the Court grants Foley's motion *in limine* and excludes the following evidence from use at trial: (1) any evidence related to the parties' Sydney, Australia meeting with EnGeneIC, including the term sheet; and (2) any expert opinion based on the meeting or the term sheet, including Lasinski and Berneman's second supplemental reports. EnGeneIC's request for attorney's fees and costs is denied.

**IT IS SO ORDERED.**

**DATED: May 6, 2009**

*[signature]*
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**